UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

ENTEGEE, INC.
a Massachusetts corporation,

        Plaintiff,

CASE NO.: 1:17-cv-00499

v.

METTERS, INDUSTRIES, INC.
a Delaware corporation,
        Defendant.
_____/

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL AND FOR SANCTIONS

Plaintiff, Entegee, Inc., by counsel, pursuant to Fed. R. Civ. P. 37, Fed. R. Civ. P. 45 and L.R. 37, respectfully submits this Memorandum in Support of its Motion to Compel and for Sanctions against third party Dr. Samuel Metters (hereinafter, the "CEO of Metters") and his counsel.

### I. Introduction

In the past year, Entegee was forced to file and litigate two lawsuits against Defendant Metters Industries, Inc. ("Judgment Debtor") for Judgment Debtor's refusal to pay more than 1.3 million dollars that was owed for staffing services performed by Entegee. In these two proceedings, Judgment Debtor lost a summary judgment motion to Entegee, was admonished by the Court for failing to comply with multiple court orders, and found in default for refusing to participate in the case. In early 2018, Entegee prevailed in each case against Judgment Debtor and obtained judgments for the full amounts owed as well as for attorney's fees and costs. To date, despite continuing to operate as a business, Judgment Debtor has refused to make even a single payment on either judgment entered in favor of Entegee. This refusal forced Entegee to

•

pursue collection efforts, which have been completely thwarted by Judgment Debtor's decision to empty or close 10 different bank accounts, which were the only assets of which Entegee was aware.

In March of this year, Entegee issued a subpoena in aid of execution seeking testimony and documents from the CEO of Metters, who is the only known employee of Judgment Debtor, in order to obtain information regarding the identity and location of Judgment Debtor's assets that are subject to collection. The CEO of Metters carefully avoided service for nearly two months, but was duly served on April 19, 2018. The deadline for compliance with the subpoena was May 10, 2018 at 10:00 am. However, instead of attending his deposition, the CEO of Metters, through counsel, filed a motion to quash the subpoena at 9:58 am on the date of compliance while counsel for Entegee sat with a court reporter awaiting his arrival. This second-to-last-minute refusal is consistent with a long-history of gamesmanship Entegee has suffered at the hands of Judgment Debtor and its employees. As explained below, this refusal obstructs Entegee's ability to collect on its judgment; forces Entegee to expend further unnecessary fees and costs to compel compliance and oppose a frivolous motion to quash; finds no support in law or fact; and should therefore be penalized harshly by the Court.

**II.     Summary of Proceedings and Relevant Facts**

Entegee brought an action against Judgment Debtor on April 27, 2017 for Judgment Debtor's failure to make any payment on a promissory note (The "Promissory Note Case") that Judgment Debtor executed in favor of Entegee in the principal amount of $675,228.42. See Dkt. No. 1. Entegee expeditiously moved for summary judgment on this claim on June 16, 2017—fifty days after filing suit. In response, Judgment Debtor claimed that it needed to conduct discovery to support a defense that any money owed was due to another entity. As a result,

Entegee's motion for summary judgment was denied without prejudice to be renewed after discovery had closed. See Dkt. No. 23.

Following the close of discovery, on November 1, 2017, Entegee renewed its motion for summary judgment. See Dkt. No. 53. On November 17, this Court heard Entegee's Motion for Summary Judgment, which it granted. See Dkt. No 65. The Court further found that the promissory note entitled Entegee to its attorneys' fees. See Dkt. No. 75. On January 16, 2018, this Court entered judgment in favor of the Plaintiff in the principal amount $675,228.42 in principal plus interest on the unpaid balance from January 16, 2017 and attorney's fees in the amount of $88,009.50 and costs in the amount of $1,782.21. See *Id.*

On May 12, 2017, Entegee filed a second case against Judgment Debtor in this district to recover damages and to obtain an equitable accounting for a breach of contract claim, an account stated claim, an unjust enrichment claim and a quantum meruit claim (the "Account Stated Case"). See *Entegee, Inc. v. Metters Industries, Inc.*:1:17-cv-00550, Dkt. No. 1. After six months of litigation in the Account Stated Case, Judgment Debtor's counsel moved to withdraw as attorneys for Judgment Debtor indicating that "there has been a breakdown in the attorney-client relationship which makes it impossible for counsel to continue its representation of the client and to adequately prepare for and defend the client at the trial." See *id.*, Dkt. No. 17 at 3.

On November 14, 2017, at the Final Pretrial Conference in the Account Stated Case, the Court granted Judgment Debtor's counsel's motion to withdraw, ordered Judgment Debtor to retain new counsel who would make an appearance by November 28, 2017, and continued the Final Pretrial Conference to November 29, 2017. See *id.*, Dkt. No. 27. Judgment Debtor did not comply with the order to retain new counsel and did not appear for the Final Pretrial Conference. See *id.*, Dkt. No. 30. On November 29, 2017, the Court issued an order for Judgment Debtor to

.

appear on December 15, 2017 (the "Show Cause Hearing") and to show cause for failure to comply with the Court's order and for failure to appear at the Final Pretrial Conference. See *id.*, Dkt. No. 31, 32. Judgment Debtor failed to appear at the hearing on December 15, 2017. See *id.*, Dkt No. 33. On December 18, 2018, Magistrate Judge Theresa Carroll Buchanan made a Report and Recommendation (the "R&R") directing the Clerk of Court to enter default against Judgment Debtor for its failure to appear at the Show Cause Hearing and explain its refusal to comply with the Court's orders. See *id.*, Dkt. No. 34 at 3. The R&R indicated that entry of default was appropriate due to Judgment Debtor's "repeated failures to follow the Court's orders . . . [and because it's] failure to secure counsel essentially br[ought] this case to a standstill." See *id.* at 2-3. On February 28, 2018, the Court entered a default judgment against Judgment Debtor in the amount of $699,705.96 plus prejudgment interest calculated from May 12, 2017. See *id.,* Dkt. No. 42.

On February 12, 2018, on request from Entegee, a Writ of Execution issued as to Judgment Debtor. See Dkt. No. 76. On February 23, 2018, a Writ of Garnishment and Suggestions for Garnishment identifying accounts and assets held by Sonabank (the "Garnishee") on behalf of Metters issued as to Judgment Debtor and Garnishee with a return date of April 6, 2018. See Dkt. No. 78. On April 5, 2018, Counsel for Plaintiff received a letter from Garnishee by fax indicating that it held no funds for Judgment Debtor. See Ex. 1 (Declaration of John P. Pennington) at ¶2, Ex. A. On April 6, 2018, counsel for Entegee appeared in Court for the garnishment hearing; the hearing was continued to May 2, 2018 due to Garnishee's failure to appear. See Dkt. No. 80. On April 20, 2018, Counsel for Plaintiff received an affidavit from Garnishee concerning Judgment Debtor's assets (the "Garnishment Affidavit"). See *id.* at ¶3, Ex. B. In relevant part, the declaration stated that (1) Judgment Debtor had 10 different bank

accounts; (2) Metters withdrew all funds and closed eight of these accounts prior to March 14, 2018; and (3) Metters withdrew all funds from the remaining two open accounts prior to March 14, 2018. *Id.* On May 2, 2018, counsel for Entegee again appeared before this Court for the garnishment hearing against Garnishee and dismissed the writ of garnishment on the basis of the Garnishment Affidavit. See Dkt. No. 85.

On April 19, 2018, after four failed service attempts occurring over the course of nearly two months, Entegee served a subpoena for testimony and documents (the "Subpoena in Aid of Execution") on the CEO of Metters, who is the only known employee of Judgment Debtor, at his residence located at 1408 North Meade St. Arlington, VA 22209. See Ex. 2. (Affidavit of Process Server). The Subpoena in Aid of Execution commanded the CEO of Metters to appear at the law office of Smith, Gambrell, and Russell, LLP at 1055 Thomas Jefferson St., N.W., Suite 400, Washington D.C. 20007 on May 10, 2018 at 10:00 am to testify at a deposition. See Ex. 3 (Subpoena in Aid of Execution). The Subpoena in Aid of Execution also commanded that the CEO of Metters to bring with him documents sufficient to identify all assets, financial or otherwise, owned by Judgment Debtor. See *id.*

On May 4, 2018, having received no objection or communications related to the Subpoena in Aid of Execution, counsel for Entegee engaged a court reporting company to provide a stenographer for the purpose of transcribing the deposition of the CEO of Metters. See Ex.1 at ¶ 4, Ex. C. On May 9, 2018, counsel for Entegee received a voicemail from Mariam Tadros who was "calling about the deposition tomorrow" no other substantive information was communicated in the voicemail. See *id.* at ¶ 5. Counsel for Entegee left a voicemail for Ms. Tadros in response, and after receiving no reply, followed up with an e-mail indicating that Entegee would proceed with the deposition of the CEO of Metters on May 10, 2018, and

inquiring whether Ms. Tadros would attend. *Id.* at ¶¶ 6, 7, Ex. D (1159 am e-mail to MT). Ms. Tadros responded that she planned to attend the deposition and further indicated that "[w]e have documents supporting [Judgment Debtor] Metters financial condition." See *id.* at ¶ 8, Ex. E. In this e-mail, Ms. Tadros further inquired whether Entegee would "accept those [documents] and waive his attendance." See *Id.* Counsel for Entegee replied that it would not agree to waive the deposition. See *id.* at ¶9, Ex. F. Ms. Tadros did not respond to this e-mail.

Later that evening, at 6:17 pm, while preparing exhibits for the next morning's deposition counsel for Entegee received a call from Ms. Jasmine Chalashtori, an associate of Ms. Tadros, who indicated that the CEO of Metters was old and in poor health and as a result would likely be unable to attend the deposition. See *id.* at ¶10. In response, counsel for Entegee indicated that it must proceed with the deposition, but offered to conduct the deposition telephonically in order to accommodate the alleged physical limitations of the CEO of Metters. See *id*. Counsel for Entegee did not receive a response to the telephonic offer or confirmation that the CEO of Metters would not appear for the deposition until 9:34 am on May 10, 2018, when counsel for Entegee called Ms. Chalashtori to again inquire if the CEO of Metters planned to attend the deposition. See *id.* at ¶ 11. Ms. Chalashtori indicated that he would not attend and subsequently forwarded an e-mail, which she sent the previous evening to an invalid e-mail address, indicating that the CEO of Metters would not appear for a deposition telephonically or otherwise. See *id.* at ¶¶ 11, 12, Ex. G.

The CEO of Metters did not appear for the deposition and no documents were produced. Instead, at 9:58 am, on May 10, 2018, exactly two minutes prior to the deposition deadline, the CEO of Metters filed a Motion to Quash the Subpoena in Aid of Execution (the "Motion to Quash"). See *id.* ¶ 13 at Ex. H (e-mail with time stamp); Dkt. No. 87. In the Motion to Quash,

the CEO of Metters asked this Court to quash the Subpoena in Aid of Execution on the ground that it would impose an undue burden on Dr. Metters by requiring him to travel to Washington, D.C. in his condition. See Dkt. No. 87 at 2. The Motion to Quash further indicated that Adrian Myrie, a former employee of the Judgment Debtor should replace the CEO of Metters as a deponent. See *id.* at 1. The Motion to Quash was unaccompanied by affidavits or other evidence to support these claims. See *id.*

After reviewing the Motion to Quash, which contained no objection to Entegee's request for documents under the Subpoena in Aid of Execution, counsel for Entegee e-mailed Ms. Tadros to inquire when the Judgment Debtor's financial documents would be produced. Ex. 1 at ¶ 14, Ex. I (e-mail regarding documents). In response, Ms. Tadros indicated "[g]iven we have filed a motion to quash, we will produce documents once that motion is ruled on." See *id.* at ¶ 15, Ex. J. In reply, counsel for Entegee reminded Ms. Tadros that there was no argument contained in the motion to quash concerning the documents and that refusing compliance with a subpoena for documents to gain leverage against a deposition is not an appropriate discovery tactic. See *id.* at ¶ 16 Ex. K. Yet, despite the fact that the Motion to Quash made no argument concerning the portion of the Subpoena in Aid of Execution relating to financial documents, and despite the fact that Ms. Tadros represented that the financial documents were already in her possession, she replied that "I have filed a motion to quash the entirety of your subpoena. As such, I am under no obligation to produce documents until the court rules on the motion." See *id.*, at ¶ 17, Ex. L. To date, Entegee has received none of the financial documents that were collected by Ms. Tadros from the CEO of Metters.

•

### III. Legal Standard

**A.  The Scope of Discovery during collection.** In proceedings in aid of a judgment or execution, a judgment creditor may obtain discovery from any person as provided by the Federal Rules of Civil Procedure or "by the procedure of the state where the Court is located." Fed. R. Civ. P. 69(b). Federal Rule of Civil Procedure Rule 30 provides that "[a] party may, by oral questions, depose any person . . . . [t]he deponent's attendance may be compelled by subpoena under Rule 45." See Fed. R. Civ. P. 30(a)(1).

**B.  Sanctions for failing to cooperate with discovery.** If a person fails to comply with discovery, a party may move for an order compelling disclosure or discovery after the movant conferred in good faith or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. Fed. R. Civ. P. 37(a)(1). Further, where Under Federal Rule of Civil Procedure 37(d), "the court . . . may, on motion, order sanctions if . . . a party . . . fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d). If a discovery violation has occurred, the Court has leeway in deciding which sanctions listed under Rule 37(b)(2)(A) are appropriate, but at a minimum, it "must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

**C.  Contempt for failing to comply with subpoena.** Fed. R. Civ. P. 45(g) provides that "The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."

**D.  Sanctions for failing to comply with Local Rules.** L.R. 37 provides that "[t]he presentation to the Court of unnecessary discovery motions . . .as well as any unwarranted opposition to proper discovery proceedings, will subject such party to appropriate remedies and sanctions, including the imposition of costs and counsel fees." L.R. 37 (G). L.R. 37 provides further that "[s]hould any party or attorney fail to comply with any of the provisions of this Local Rule 37, sanctions provided by Fed. R. Civ. P. 37 may be imposed. L.R. 37 (H).

**IV. ARGUMENT**

**A.  The Subpoena in Aid of Execution does not place an undue burden on the CEO of Metters.**

The Subpoena in Aid of Execution required The CEO of Metters to travel exactly **two miles** from his house in Arlington, Virginia to the Office of Smith, Gambrell and Russell, LLP. See Ex. 1 at ¶ 18, Ex. M. The CEO of Metters is the Founder, Chairman and CEO of Judgment Debtor, which as recently as last year was a major business performing under multimillion dollar contracts. See *id.* at ¶ 19, Ex. N. It defies logic that the president of a major company would be unable to travel and sit for a deposition to testify about his knowledge of his own company's financial assets. If he could not accomplish this simple task, he would have retired from his position already. Moreover, his refusal to cooperate with Entegee's offer to accommodate him through a telephonic deposition makes clear that his travel difficulty claim is merely a pretext to avoid answering questions under oath. Indeed, this claim is so patently ridiculous that it strengthens Entegee's belief that the CEO of Metters is using an undue burden objection to hide relevant knowledge concerning the identity, location and disposition of Judgment Debtor's assets.

**B. The CEO of Metter's refusal to comply with the Subpoena in Aid of Execution precludes Entegee from collecting against Judgment Debtor.**

Entegee has pursued payment from the Judgment Debtor for nearly two full years. In the interim, the Judgment Debtor maintained frivolous defenses to payment in litigation, refused to comply with Court orders in this district, lost completely in both of its cases, and transferred or withdrew all of its assets from 10 different bank accounts. In addition to causing the expenditure of more than $100,000.00 in attorney's fees, these actions precluded Entegee from recovering even a single cent of the more than 1.3 million dollars of work that it performed for Judgment Debtor. The broad language of Fed. R. Civ. P. 69, which allows a judgment creditor to obtain discovery from any person in aid of execution, is tailor made for this situation because it provides Entegee with a flexible and judicially enforceable means to search for, identify, and thereafter collect on Judgment Debtor's assets. Under this rule, Entegee chose to subpoena the CEO of Metters because he (1) is the only known full-time employee; (2) has the longest tenure with the company; and (3) as the CEO, is highly likely to know the identity and location of the Judgment Debtor's assets.

However, instead of complying with the subpoena, the CEO of Metters, through counsel that also represents Judgment Debtor, demanded that Entegee forgo its Subpoena in Aid of Execution in exchange for an unrequested 30(b)(6) deposition of Judgment Debtor on unspecified topics through a former employee, Adrian Myrie, who left the company in 2017. See Ex. 1 at ¶ 20, Ex. O.

There are multiple reasons why this represents an unacceptable alternative. First, Judgment Debtor has continually misled Entegee concerning financial matters, refused to honor its contractual obligations, defied Court orders, and refused to make payments on judgments

entered by this Court. This course of behavior does not engender Entegee's trust or support a belief that Judgment Debtor will suddenly alter the course of its dishonest and inexcusable conduct to assist Entegee in obtaining payment. If history is a guide, this proposed alternative is likely an intentional attempt to "hide the ball" by obstructing Entegee from pursuing the deposition that will actually prove useful for collection. Second, Adrian Myrie left the company in November of 2017. It is far more likely that a current CEO will have information concerning the current financial condition than an employee who was released 6 months ago. Third, this is a judgment for more than **1.3 million dollars**; Entegee is not limited to one deposition to identify assets subject to collection, Entegee may issue as many subpoenas as necessary to collect on its judgment against the Judgment Debtor.

## C. The Court should sanction the CEO of Metters and his Counsel.

The CEO of Metters' refusal to comply with Subpoena in Aid of Execution and the arguments contained in the Motion to Quash have no factual or legal basis. The Motion to quash contains only one assertion to support its claim that the Subpoena in Aid of Execution subjects the CEO of Metters to undue burden, which is that he "has difficulty traveling." As explained above, but conspicuously absent from the Motion to Quash, the CEO of Metters was only required to travel **two miles** for the deposition. Even assuming that the CEO of Metters is unable to drive, there is simply no way, with all of the conveniences of modern public and private transportation options, that this distance can be construed as burdensome. Moreover, and also conspicuously unaddressed by the Motion to Quash, Entegee offered to accommodate the CEO of Metters with **a telephonic deposition**. Refusing to comply with the requirement to provide testimony under these circumstances is inexcusable. Moreover, there are no affidavits, declarations, or other evidence to support this position; **it is all attorney argument.** Plain and

•

simple, this is bad faith conduct. There is no adequate excuse for this refusal and the CEO of Metters and his counsel advising him should be sanctioned by the Court pursuant to Fed. R. Civ. P. 37 (a)(5), (d)(1)(A)(i), (d)(3); Fed. R. Civ. P. 45(g); and L.R. 37(G),(H).

Even worse, the CEO of Metters used the production of documents that it collected from its client as leverage to demand that Entegee forgo the deposition and then refused production of those same documents when Entegee insisted on proceeding with the deposition. There was no justification for this refusal, and, indeed, the CEO of Metters did not even allege in the Motion to Quash that the production would be burdensome or providee any other objection to production whatsoever. Again, there is no adequate excuse for this refusal and the CEO of Metters and his counsel advising him should be sanctioned by the Court pursuant to Fed. R. Civ. P. 37 (a)(5); Fed. R. Civ. P. 45(g); and L.R. 37(G),(H).

**Conclusion**

For the foregoing reasons, Entegee respectfully requests that this Court grant its Motion to Compel and for Sanctions, and order that (1) Dr. Samuel Metters immediately and completely comply with the Subpoena in Aid of execution; (2) that Dr. Samuel Metters be found in contempt for failing to comply with the subpoena; and (3) that Dr. Samuel Metters and his counsel be sanctioned for Dr. Metters' refusal to comply with the subpoena by paying Entegee's reasonable expenses incurred in bringing the Motion to Compel and for Sanctions as well as for reasonable expenses incurred in opposing the Motion to Quash.

.

Respectfully submitted,
**Entegee, Inc.**
By Counsel

Dated: May 18, 2018         **SMITH, GAMBRELL & RUSSELL, LLP**

*/s/John P. Pennington*_____
John P. Pennington
Virginia Bar No. 82512
jpennington@sgrlaw.com
1055 Thomas Jefferson Street, NW, Suite 400
Washington, DC 20007
Tel:  (202) 263-4360
Fax:  (202) 263-4348


Steven Eric Brust (admitted *pro hac vice)*
Florida Bar No.832091
sbrust@sgrlaw.com
Richard Dean Rivera (admitted *pro hac vice*)
Florida Bar No. 108251
rrivera@sgrlaw.com
Bank of America Tower
50 N. Laura Street, Suite 2600
Jacksonville, FL 32202 USA
(904) 598-6100
(904) 598-6257

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, the undersigned counsel for Plaintiff, hereby certify that on May 18, 2018 a copy of the foregoing was filed electronically which will be automatically served on all parties who are registered to receive service through the Court's electronic filing system. All other parties will be served through U.S. mail.

/s/John P. Pennington
John P. Pennington